IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00392-FL

HENRY MACK EVANS, JR., )
 )
 Plaintiff, Claimant, )
 )
 v. ) **MEMORANDUM AND**
 ) **RECOMMENDATION**
 )
 )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
 )
 Defendant. )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -19] pursuant to Fed. R. Civ. P. 12(c). Claimant Henry Mack Evans, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on October 4, 2010, alleging disability beginning March 1, 2008. (R. 108, 312-29). Both claims were denied initially and upon reconsideration. (R. 211-33). A hearing before an Administrative Law Judge

("ALJ") was held on July 23, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 133-64). On November 5, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 105-19). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 10), and submitted additional evidence as part of his request (R. 11-101). In a notice dated March 19, 2014, the Appeals Council granted Claimant's request for review and gave thirty days for submission of evidence. (R. 307-11). After reviewing and incorporating the additional evidence into the record, the Appeals Council issued a decision adopting the findings and conclusions of the ALJ on May 29, 2014. (R. 1-8). The Appeals Council determined that only Claimant's application for a period of disability and DIB were before the ALJ and limited the scope of the decision to the period at issue in Claimant's Title II claim (from the alleged onset date of March 1, 2008, through Claimant's date last insured ("DLI") of March 31, 2010). (R. 5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount

2

of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies

3

four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred in evaluating Claimant's credibility and Residual Functional Capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-16-1] at 3-10.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment during the period from his alleged onset date through the date of the decision. (R. 110). Next, the ALJ determined Claimant had the following severe impairments: obesity, gout, gouty arthritis, and esophageal reflux. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 110-11).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] with the following limitations: avoiding climbing ladders, ropes, and

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of
(continued...)

4

scaffolds; able to sit for six hours in an eight-hour day and stand and walk occasionally in an eight-hour day; and be able to frequently perform handling or fingering. (R. 111). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 113). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a stock clerk and truck driver helper. *Id.* Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 114-15).

## B. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 30 years old and living with his wife and three children. (R. 137, 152). Claimant attained an eleventh grade education. (R. 141). Claimant was last employed with KanBan,[2] where his duties included repacking televisions and other appliances. (R. 138). Claimant's past work experience also includes positions at QVC, NBM, and Winn Dixie, at which he had the tasks of stocking shelves, unloading trucks, and packing trucks. (R. 138-40).

Claimant testified that he is unable to work due to pain associated mostly with gout and gouty arthritis. (R. 141-52). Claimant testified the pain first affected his work in 2008, when he

---

[1](...continued)
walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

[2] The hearing transcript referred to the company as "CanVan"; however, according to the company's website, the company's name is "KanBan."

experienced swelling, pain, and trouble standing on his feet. (R. 141). Claimant first tried to control the swelling and pain by switching the type of shoes he wore and taping and wrapping his feet. *Id.* However, the swelling became so severe that Claimant was unable to walk out of the building and was brought to the emergency room. (R. 141-42). Claimant testified he had gout flare-ups once, sometimes twice a week. (R. 142). The gout flare-ups usually occur when Claimant stands on his feet for an hour. (R. 143). Claimant testified that during the gout flare-ups, he has difficulty walking and mostly sits with his legs elevated. (R. 142-44). In order to move, the Claimant crawls or uses crutches. (R. 144). Claimant also testified that he has difficulty sitting. (R. 151-52). After sitting, Claimant's knees are stiff and it takes him several minutes to be able to move around. (R. 152). When asked about the pain during a gout flare-up, Claimant described it as a very sharp pain and rated the pain as a "twenty" on a scale from one to ten. (R. 147). Further, Claimant testified the pain during a gout flare-up is the most severe pain he has experienced. *Id.*

At the time of the hearing, Claimant was taking several prescription medications and had plans to see a new foot specialist. (R. 144-45). Claimant testified his current treating physician, Dr. Pergas, would give Claimant shots in his feet to ease the pain. (R. 145-46). Claimant usually received a shot for the pain once a month or every two weeks. (R. 146). Dr. Pergas also performed x-rays on Claimant and discovered a fracture in Claimant's right foot, caused by Claimant's arthritis. *Id.* Claimant's foot was placed in a cast for two months, but Claimant has not had surgery for the fracture. *Id.* According to Claimant's testimony, Dr. Pergas told Claimant not to walk and to stay off of his feet as much as possible. (R. 148). In regards to pain medication, Claimant testified the medication eases his pain, but it does not take the pain completely away. (R. 147). Further, the medication gives the Claimant side effects with his stool and makes him nauseated and sleepy.

6

(R. 147, 155). Claimant testified he experienced less pain when he ate less, stayed off of his feet, and elevated his feet. (R. 144).

Claimant testified he struggled to cook meals. (R. 152-53). Claimant was limited to cooking meals which allowed him to leave the room to sit down and return to cooking once the meal was done because Claimant could only be active for thirty minutes before he began to experience aches. *Id.* Further, Claimant testified his driving was limited due to the pain in his feet and the side effects caused by his gout medication. (R. 153). Claimant only drove his children to school or to the doctor's office. *Id.* Claimant also testified the pain limited his ability to do housework. *Id.* Claimant was unable to cut the grass or clean the house. *Id.*

Claimant spends the majority of his time at home, with his feet elevated. (R. 155). Claimant's typical morning consists of elevating his feet while sitting in his recliner, taking his medication for acid reflux and gout, and waiting for the side effects of his medications to wear off. (R. 154-55). Claimant testified that he is mostly a "homebody" and does not visit friends or relatives because he tries to stay off of his feet to alleviate the pain. (R. 157). One of Claimant's hobbies is cutting hair, which he used to do at his home. (R. 155-56). However, due to pain, Claimant has stopped participating in this hobby and mostly just watches television now. (R. 155).

Claimant is on a special diet and weighed 310 pounds at the time of the administrative hearing. (R. 157). At an earlier date, Claimant weighed 400 pounds. *Id.* Claimant attributed his weight loss to his special diet and stomach pains that have limited his ability to eat. (R. 157-58). Claimant described the stomach pain as his stomach burning, pains through his back, and his stomach being in a big knot. *Id.* Claimant testified the weight loss did not help his pain or ability to move around. (R. 158).

## C. Vocational Expert's Testimony at the Administrative Hearing

Steven D. Carpenter testified as a VE at the administrative hearing. (R. 158-63). After the VE's testimony regarding Claimant's past work experience (R. 159-60), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, who is able to perform light work, with the additional limitations that he should avoid climbing ladders, scaffolds, ropes, and the like. (R. 160). The VE testified that such an individual could perform the jobs of assembler-electrical accessories I, light exertion, SVP of 2, unskilled, DOT # 729.687-010; assembler-production in any industry, light exertion, SVP of 2, unskilled, DOT # 706.687-010; and cashier II-clerical industry, light exertion, SVP of 2, unskilled, DOT # 211.462-010. (R. 160-61).

The ALJ next asked the VE to assume the hypothetical individual has all the previous limitations and his ability to stand and walk during the day was limited to "on an occasional basis." (R. 161). The VE testified that the above stated jobs could be performed by the hypothetical individual. (R. 161-62). The VE explained those jobs have a sit stand option, and would "require more than the two hours sitting as in the sedentary classification, but not necessarily six of eight hours as in the light classification." (R. 161). Those jobs would typically require three to four hours standing at a work station, but no walking. *Id.*

The ALJ next asked the VE to assume the same individual's ability to use his hands for handling and fingering was on a frequent, but not continuous, basis. (R. 162). The VE testified the hypothetical individual could perform the jobs of sales attendant, light exertion, SVP of 2, unskilled, DOT # 299.677-010; router, clerical industry, light exertion, SVP of 2, unskilled, DOT # 222.587-038; and mail clerk, light exertion, SVP of 2, unskilled, DOT #209.687-026. (R. 162-63).

8

Claimant's attorney asked the VE if any of the jobs cited would allow an individual to keep his legs elevated during the day, to which the VE responded in the negative. (R. 163).

## V. DISCUSSION

### A. The ALJ's Credibility and RFC Determinations

Claimant contends the ALJ erred by failing to take account of Claimant's inability to stand and walk even on an occasional basis in his RFC determination and hypothetical questions to the VE. Pl.'s Mem. [DE-16-1] at 6-10. Claimant further argues that his testimony in this regard is credible because his testimony is supported by the medical evidence. *Id.* at 8-10. Defendant argues the Commissioner's decision is supported by substantial evidence and the decision should be affirmed. Def.'s Mem. [DE-20] at 5-9. The undersigned construes Claimant's argument to be that the ALJ improperly evaluated Claimant's credibility, which resulted in an inaccurate RFC. The undersigned disagrees.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined

9

effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Furthermore, when assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the

10

complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Here, the ALJ found Claimant's obesity, gout, gouty arthritis, and esophageal reflux to be severe impairments (R. 110) and recognized Claimant's limitations preclude some work requiring climbing ladders, ropes, scaffolds, or the like. (R. 111). The ALJ also found that Claimant had medically determinable impairments which could reasonably be expected to cause the alleged symptoms, but the ALJ concluded that Claimant's statements regarding the intensity, persistence, and limiting effects of the symptoms were "not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment."[3] (R. 113). The ALJ further concluded that Claimant was capable of performing light work with postural and manipulative restrictions. (R. 111).

After reviewing the ALJ's decision, the undersigned finds the ALJ made the necessary findings in support of his credibility determination. *See Shively*, 739 F.2d at 989 ( stating the ALJ's

---

[3] The boilerplate language used here by the ALJ to explain his credibility assessment was found to be error by the Fourth Circuit Court of Appeals in *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). However, the Fourth Circuit also indicated that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Id.* As detailed below, the ALJ here went on to fully explain the reasons for discounting Claimant's testimony. (R. 113). Thus, the use of the boilerplate language is harmless error.

observations concerning questions of credibility are to be given great weight) (citations omitted). In assessing Claimant's RFC, the ALJ thoroughly discussed Claimant's treatment records (R. 111-13), considered the opinion of a consultive examiner (R. 113), and considered the testimony of the Claimant. (R. 111-13). Specifically, the ALJ focused on the inconsistencies between Claimant's testimony and medical records. (R. 113). Claimant testified during a gout flare up, he could not walk or stand (R. 143-44, 147-48); however, treatment notes state Claimant's gait was steady. (R. 425) (treatment note dated January 28, 2008, shows the patient arrived at the emergency room complaining of severe gout pain but describe Claimant's gait as "ambulatory with steady gait" and "in no acute distress"); (R. 417-20) (treatment note dated June 8, 2008 where Claimant was "ambulatory with steady gait"); (R. 446-48) (treatment note dated April 14, 2009 where Claimant was in no acute distress, had "equal tone, movement, and strength" in lower extremities, and an intact gait); (R. 440) (treatment note dated August 28, 2009 where Claimant complained of bilateral foot pain but was in no acute distress and had a "steady gait"). Further, in 2010, Claimant reported he struggled to work as a barber because of foot pain (R. 155-56), but records indicate Claimant was still performing some barber work as late as June 2012. (R. 433) (treatment note dated November 5, 2010, shows Claimant reported having a hard time working as a barber when his pain flares up and listing Claimant's occupation as "cuts hair"); (R. 486) (treatment note dated June 26, 2012 states Claimant has been working as a barber some). The ALJ highlighted the fact that "any barbering requires significant ability to stand." (R. 113).

The ALJ properly evaluated Claimant's subjective accounts of pain and inability to stand or walk with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Notably, the ALJ thoroughly cited the medical evidence,

12

which at no point documented that Claimant's pain created an inability to stand or walk. (R. 1137; 409-512). The ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96–7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record, and Claimant's own testimony. *See Mascio*, 780 F.3d at 639 (explaining the ALJ "should have compared [claimant's] alleged functional limitations from pain to the other evidence in the record" when evaluating credibility); *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations . . . ."). Further, Claimant is essentially asking the court to reconsider the testimonial and other record evidence and give controlling weight to Claimant's testimony regarding the extent of his limitations. It is not within the province of the undersigned to re-weigh the evidence, even if the undersigned might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and his decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). For the foregoing reasons, Claimant's argument as to this issue is without merit, and the ALJ did not err in failing to include the additional limitations asserted by Claimant in the RFC.

Claimant also contends that the ALJ erred by failing to include in his hypothetical to the VE Claimant's inability to stand or walk even on an occasional basis. Pl.'s Mem. [DE-16-1] at 7-8. Claimant's contention is without merit. The purpose of a VE's testimony is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the

record. *Id.*, *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). Further, the task of the reviewing court is simply to determine whether substantial evidence supports the ALJ's decision, not to "substitute its judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In this case, the ALJ's hypothetical presented to the VE adequately reflected Claimant's RFC as determined by the ALJ. The ALJ gradually added limitations to his original hypothetical until it posited an individual of the same age, education, and work background as Claimant who could perform light work, had a limited ability to stand and walk, and had the ability to use his hands for handling and fingering on a frequent but not continuous basis, while avoiding activities such as climbing ladders, scaffolds, ropes, and the like. (R. 160-62). Based on this hypothetical, the VE testified Claimant could perform work as a sales attendant, router, or mail clerk. (R. 162). Because Claimant's stated standing and walking limitations were not supported by the record, the hypothetical questions posed to the VE were proper and the ALJ did not err in omitting these limitations from the hypothetical questions. (R. 160-62); *Walker*, 889 F.2d at 50 (holding a proper hypothetical question "fairly set[s] out all of the claimant's impairments" that are supported by the record).

As discussed above, the ALJ made a proper credibility determination when comparing

14

Claimant's testimony to the medical records and properly determined the Claimant was not as limited in his ability to stand or walk as Claimant testified. As such, the ALJ did not err in failing to include the limitations of being unable to walk or stand in his RFC determination. Therefore, the limitations which Claimant cites were properly excluded from the hypothetical questions given to the VE, and Claimant's argument fails.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-19] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties' counsel. Each party shall have until **July 8, 2015** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such

review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 24th day of June, 2015.

_____
Robert B. Jones, Jr.
United States Magistrate Judge